UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EDUARDO MONTAS UBIERA, *pro se*,          :
                                          :
                   Petitioner,            :     **MEMORANDUM AND ORDER**
                                          :     05-CV-4225 (DLI)
        -against-                         :
                                          :
UNITED STATES OF AMERICA                  :
                                          :
                   Respondent.            :
-----------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* petitioner Eduardo Montas Ubiera seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255, vacating his conviction and sentence for ineffective assistance of counsel. On March 10, 2005, petitioner pled guilty to importation of a controlled substance in violation of 21 U.S.C. § 952(a). On June 14, 2005, this Court sentenced petitioner to twenty-four months of imprisonment followed by three years of supervised release. Petitioner contends that trial counsel, in violation of the Sixth Amendment to the United States Constitution, failed to advise him that he would be subject him to certain deportation if he pled guilty. For the reasons set forth below, the motion is denied and the petition is dismissed in its entirety.

**Background**

On November 15, 2004, petitioner arrived at John F. Kennedy International Airport on a flight from the Dominican Republic. (Plea Hr'g Tr.[1] at 22.) Upon his arrival, customs officials searched petitioner and discovered over eight kilograms of cocaine hidden inside his luggage. (*Id*.) Petitioner was arrested and indicted on one count of importation of cocaine and one count of possession of cocaine with intent to distribute. (Gov't. Br. at 3.)

---
[1] All citations to petitioner's plea hearing transcript, dated March 10, 2005, are referenced as "Plea Hr'g Tr."

On March 10, 2005, petitioner, a native of the Dominican Republic and a United States permanent resident alien, pursuant to a written plea agreement, pled guilty to one count of importation of a controlled substance, an "aggravated felony" under the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA").[2] In the plea agreement, petitioner expressly waived his right to appeal or collaterally attack his conviction or sentence if sentenced to sixty three months of imprisonment or below. (Plea Agreement at ¶ 4; Plea Hr'g Tr. at 13.)

During his plea hearing, through the assistance of a Spanish language interpreter, the court asked petitioner a series of questions. (Plea Hr'g Tr. at 2.) Specifically, the court inquired whether petitioner was satisfied with his attorney's representation:

> THE COURT: Are you fully satisfied with the representation and the advice given to you in this case by your attorney, Mr. Miedel?
>
> THE DEFENDANT: Yes.

(*Id*. at 7.) The court went on to explain to petitioner the possible direct and collateral consequences of a guilty plea, including possible deportation.

> THE COURT: Mr. Montas Ubiera, are you a sentence [sic - citizen] of the United States?
>
> THE DEFENDANT: No.
>
> THE COURT: I must also advise you that by a conviction in this case by pleading guilty as well and [sic - as] receiving a sentence, that you could also be subject to deportation or removal from the United States.
>
> Do you understand that?

---

[2] Pursuant to 8 U.S.C. § 1101(a)(43)(B), an aggravated felony includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."

> THE DEFENDANT: Yes.

(*Id*. at 18.) Before the court accepted petitioner's plea, the court asked petitioner:

> THE COURT: Mr. Montas Ubiera, do you have any questions that you would like to ask me about this charge or your rights or anything else relating to this matter?
>
> THE DEFENDANT: No.

(*Id*. at 20.) The Court accepted petitioner's guilty plea concluding that "defendant [acted] voluntarily, that he underst[ood] his rights and the consequences of his plea and that there [wa]s a factual basis for the plea." (*Id*. at 22-23.)

On June 14, 2005, petitioner was sentenced to twenty-four months of incarceration followed by three years of supervised release, with the special condition that, if deported, petitioner was not to reenter the United States illegally. (Sent. Tr. at 10-11.)[3]

On August 17, 2006, petitioner filed the instant *habeas* petition challenging the validity of his guilty plea alleging ineffective assistance of counsel and requesting the appointment of new counsel. Respondent contends that (1) petitioner waived his right to collaterally challenge his conviction and sentence; and, in the alternative, (2) petitioner failed to establish that his counsel misrepresented the immigration consequences of his guilty plea and that petitioner was not prejudiced by counsel's alleged misrepresentation.

## Discussion

**I.   Petitioner Waived His Right To Seek *Habeas* Relief.**

Petitioner waived his right to seek *habeas* relief when he agreed "not to file an appeal or otherwise challenge his conviction or sentence in the event that the Court imposes a term of

---

[3] All citations to petitioner's sentence hearing transcript, dated June 14, 2005, are referenced as "Sent. Tr."

imprisonment of 63 months or below." (Gov't. Br. Ex. A at 3.) Because petitioner received a non-guidelines sentence of twenty-four months of imprisonment, which was below the threshold stipulated to in his plea agreement, petitioner waived his right to challenge his conviction.

Courts have rejected *habeas* petitioners' attempts to challenge their convictions where petitioners waived that right pursuant to a written plea agreement. *See Garcia-Santos v. United States*, 273 F.3d 506 (2d Cir. 2001) (per curiam); *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995). Specifically, courts have upheld such waivers when a petitioner agrees, pursuant to a written plea agreement, not to challenge a sentence within a stipulated guideline range. *See Garcia-Santos*, 273 F.3d at 508-9 (holding petitioner's waiver of appeal and collateral attack binding in § 2255 proceeding when sentenced to an imprisonment term within stipulated guideline range); *Pipitone*, 67 F.3d at 39 (holding petitioner's "explicit undertaking in the [Plea] Agreement not to appeal a sentence that fell within a guideline range" precluded him from both directly appealing or collaterally challenging his sentence).

Here, not only did petitioner sign the written plea agreement, he affirmatively indicated that he read and understood the terms of the plea agreement. (Plea Hr'g Tr. at 13-16.) In fact, petitioner affirmatively indicated that he understood that by "pleading guilty and by entering into [the] plea agreement . . . [he] will have waived or given up [his] right to an appeal or collaterally attack all or part of the sentence." (Plea Hr'g Tr. at 13.) Moreover, petitioner indicated that he reviewed the agreement with both his attorney and a Spanish language interpreter. (Plea Hr'g Tr. at 14-15.)[4] Therefore, petitioner knowingly and voluntarily waived his right to seek *habeas* relief.

---

[4] The court notes in this regard that petitioner admitted some familiarity with the English language and that he completed three semesters in architectural studies at a university in the Dominican Republic. (Plea Hr'g Tr. At 2, 5, 6)

## II. Petitioner's Claim of Ineffective Assistance of Counsel is Without Merit.

Petitioner claims a violation of his Sixth Amendment right to effective assistance of counsel because his attorney allegedly misrepresented the immigration consequences of petitioner's guilty plea. (Pet. at 2-3.) The court evaluates petitioner's claim under the framework set forth in *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A defendant must first establish that 'counsel's representation fell below an objective standard of reasonableness.' Second, 'the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002) (citing *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement." *Strickland*, 466 U.S. at 690.

The Second Circuit has held that an attorney's failure to inform a client of deportation consequences of a guilty plea does not constitute ineffective assistance of counsel. *See Couto*, 331 F.3d at 187 (citing *United States v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975) (per curiam) (noting that attorney's failure to inform a defendant that a guilty plea could result in deportation "is of no legal significance")). However, the Second Circuit held in *Couto*, that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is . . . objectively unreasonable[,] and meets the first prong of the *Strickland* test." 331 F.3d at 188.

8 U.S.C. § 1228(b)(5) of the Immigration and Nationality Act provides that "[n]o alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion." Section 1228(b) defines an alien as "an alien (A) [] not

lawfully admitted for permanent residence at the time at which proceedings under this section commenced; or (B) [with] permanent resident status on a conditional basis at the time that proceedings under this section commenced." 8 U.S.C. § 1228(b)(2). The Third and Ninth Circuits have limited the application of §1228(b)(5) to only aliens subject to expedited deportation proceedings, such as non-permanent resident aliens. *See United States v. Arrieta*, 224 F.3d 1976, 1080-81 (9th Cir. 2000) (holding that "[t]he structure of the Immigration and Nationality Act, and the placement of § 1228(b)(5) within it, [] support[s] the conclusion that it reaches only aliens subject to expedited removal"); *Bamba v. Riley*, 366 F.3d 195, 200 (3d Cir. 2004) ("Congress has provided that aliens "not lawfully admitted for permanent residence" who commit certain "aggravated" felonies are deportable under expedited removal procedures).

The Second Circuit has indicated in dicta that "the 1996 amendments to the Immigration and Nationality Act eliminated all discretion, [including any discretion by the Attorney General] as to deportation of non-citizens convicted of aggravated felonies." *See Couto*, 311 F.3d at 183-84; *see also* 8 U.S.C. 1228(b)(5). Thus, it appears that a non-citizen defendant that pleads guilty to an aggravated felony is subject to "automatic" and "unavoidable" deportation. *Id.* at 184. However, the Second Circuit's holding in *Couto* is not inconsistent with the Third and Ninth Circuit's reading of 8 U.S.C. § 1228(b)(5) because the defendant in *Couto* was a non-permanent resident alien, subject to expedited deportation proceedings. Thus, the Second Circuit's decision in *Couto* did not decide whether § 1228 is also applicable to permanent resident aliens, not subject to expedited proceedings.

Here, petitioner contends that counsel misrepresented the immigration consequences of petitioner's guilty plea when counsel advised that "defendant can seek leniency from any immigration judge that he might appear before and that such a judge could, in his discretion, allow

this defendant to remain in the United States" because, pursuant to 8 U.S.C. 1228(b)(5), deportation was certain and petitioner would not have the opportunity to seek leniency. (Pet. at 2.) Petitioner likens his situation to that in *Couto* where the Second Circuit found that a violation of the defendant's Sixth Amendment right to effective assistance of counsel was violated when defense counsel advised that "there were many things that could be done to prevent her from being deported, including asking the judge for a letter recommending against deportation." *Couto*, 311 F.3d at 184. However, petitioner's reliance on *Couto* is misplaced.

The *Couto* case is distinguishable on three critical grounds. First, the defendant in *Couto* was a non-resident alien, whereas petitioner is a permanent resident. The elimination of the Attorney General's discretion in the deportation of aliens convicted of aggravated felonies is limited to non-permanent resident aliens and conditional permanent resident aliens. *See* 8 U.S.C. § 1228(b)(2); (b)(5); *Arrieta*, 224 F.3d at 1080-81; *Bamba*, 366 F.3d at 200. Petitioner was neither a non-resident alien, nor a conditional permanent resident at the time he entered his guilty plea. Therefore, § 1228(b)(5) does not apply to petitioner.

Second, defense counsel in *Couto* affirmatively misrepresented the implications of defendant's guilty plea, whereas defense counsel in the instant matter made no such misrepresentation. In *Couto*, although deportation was certain, defense counsel advised defendant that "there were many things that could be done to prevent her from being deported, including asking the judge for a letter recommending against deportation." *Couto*, 311 F.3d at 184. Here, defense counsel discussed with defendant the possibility of deportation and advised that "defendant can seek leniency from any immigration judge that he might appear before and that such a judge could, in his discretion, allow this defendant to remain in the United States." (Pet. at 2.) Defense

counsel did not affirmatively misrepresent the possibility of seeking leniency because, with legal permanent resident aliens convicted of an aggravated felony, deportation is not certain. Defense counsel's representation that an immigration judge *could* allow the defendant to remain in the United States, and that an immigration judge has the *discretion* to do so, is an objectively reasonable reflection of the law. Accordingly, petitioner has failed to meet the performance prong of *Strickland*.

Third, the court in *Couto*, found a "probability beyond peradventure" that, "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." 311 F.3d at 188. The defendant in *Couto*, as part of a 32-count indictment, was charged with bribery and conspiracy to commit bribery of an INS official. The Second Circuit found that

> defendant's whole behavior – including her alleged crime – was designed to avoid deportation. And as soon as she learned the deportation consequences of her plea, she immediately sought to withdraw it. Under the circumstances, there can be no doubt that the likelihood of a guilty plea would have greatly diminished had counsel not misled her.

*Id.* at 188 n. 9. In *Couto*, during the defendant's plea allocution hearing, "no mention was made of any possible deportation," by either defense counsel or the court. *Id.* at 187. In the instant case, even if the defense counsel misrepresented the immigration consequences of petitioner's guilty plea, petitioner failed to establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The petitioner pled guilty to importation of controlled substances and was informed of the possibility of deportation by his attorney. The court explained to petitioner the possible direct and collateral consequences of a guilty plea, including possible deportation. (Plea Hr'g Tr. at 9-21.) Petitioner informed the court that he was not a citizen of the

-8-

United States. (*Id*. at 18.) The court then ascertained that petitioner understood that, "by pleading guilty as well and [sic – as] receiving a sentence, [he] could also be subject to deportation or removal from the United States." (*Id*.) Each time petitioner was reminded of the possibility of deportation, he did not seek to withdraw his plea, but rather remained silent. Indeed, after the court informed petitioner of the possibility of deportation and before the court accepted petitioner's plea, the court asked petitioner if he had any questions for the court about the charge, his rights or anything related to this matter, and the petitioner responded "No." (*Id.* at 20.) Significantly, unlike the defendant in Couto whose actions the Second Circuit determined demonstrated her desire to remain in the United States, the record here shows that defendant's employment, parents, wife, and other family members were all in the Dominican Republic. Accordingly, the court advised petitioner that, if petitioner wished to return to the Dominican Republic voluntarily, it would recommend to the immigration authorities that they expedite his deportation proceedings. (Sent. Tr. At 9-10, 11, 12) At no time did petitioner object to the court's recommendation or otherwise indicate a desire to remain in the United States.

Furthermore, petitioner neither denies his guilt of the crime to which he pled guilty, nor argues that the Government would not have been able to convict him had he proceeded to trial. *See Taylor v. United States*, No. 03 Civ. 9808, 2004 WL 1857574 (S.D.N.Y. Aug. 18, 2004) (finding petitioner failed to establish ineffective assistance of counsel where petitioner did not deny guilt of crime or argue that government would not have been able to convict him at trial). In fact, petitioner admitted during his plea allocution that he had made "[t]he greatest mistake in [his] life, [namely] importation of a substance [] controlled substance into the United States . . . From the Dominican Republic . . . to Kennedy in New York . . . ." (Plea Hr'g. Tr. at 21-22.) Petitioner also indicated

that he was aware he was bringing illegal drugs into the United States. *Id.* Because at the time petitioner pleaded guilty he was adequately informed by the court of the consequences of his guilty plea, and demonstrated an understanding of the possibility of his deportation, and he does not dispute his guilt, petitioner has failed to meet his burden under the prejudice prong of *Strickland*.

## Conclusion

For the reasons set forth above, the petition for a writ of *habeas corpus* is denied in its entirety. No certificate of appealability is granted with respect to petitioner's claim, petitioner having made no substantial showing of the denial of a Constitutional right.

SO ORDERED.

DATED:  Brooklyn, New York
        February 27, 2007

                                                        /s/
                                              DORA L. IRIZARRY
                                           United States District Judge